## WILLIAMS v. HUGHES TOOL CO.
### No. 4488.

United States Court of Appeals
Tenth Circuit.

Nov. 1, 1952.

Robert F. Davis, Washington, D. C., and Charles M. McKnight, Tulsa, Okl., for appellant.

Edward A. Haight, Chicago, Ill. (George I. Haight, Chicago, Ill., Robert F. Campbell, Ray L. Smith, Houston, Tex., and Lynn Adams, Oklahoma City, Okl., were with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON, HUXMAN, MURRAH, and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

This was an action instituted by Hughes Tool Company against C. F. Williams, Jr. The complaint contained two counts or causes of action. It was alleged in the first count or cause of action that Hughes owned Letters Patent No. 1,856,627 relating to drill cutters and Letters Patent No. 1,-983,316 relating to three-cone bits, used in the drilling of wells for oil and gas; that Williams was engaged in the business of procuring bits manufactured by Hughes embodying the inventions of the patents, welding new material on their worn cutter shells, and building new teeth thereon; and that such acts and conduct on the part of Williams constituted reconstructing and rebuilding the cutters and bits in infringement of the rights of Hughes in the patents. It was alleged in the second count or cause of action that Hughes did not sell its drill bits; that instead, it leased them with a provision in the lease agreements that when the original cutter teeth and bearings had served their useful lives, the user would surrender the bits to Hughes upon request, and that in accepting delivery of such bit the user agreed not to surrender any of

the tools therein mentioned to other than a duly authorized representative of Hughes; that with full knowledge that the drill bits manufactured by Hughes were not sold but remained its property, Williams had caused and was causing lessees of such property to surrender possession thereof to him; and that he had unlawfully taken and converted and was continuing to take and convert such property to his own use, and to weld new material on the worn cutter shells of the bits and to build new teeth thereon. Injunctive relief and damages were sought. By answer, Williams pleaded invalidity, non-infringement, and misuse of the patents; and by counterclaim, he sought damages for injury to his business and reputation, and an injunction restraining Hughes from further acts of unfair competition. The court found among other things that the respective claims of the patents in issue were valid; that they were infringed; that the leasing agreements were valid; that there was no misuse of the patents; and that the material allegations of the counterclaim had not been proved. Conforming to such findings, the judgment determined and adjudicated validity and infringement of the patents; determined and adjudicated interference with the rights of Hughes under the leases by which it licensed use of the bits to others; and enjoined Williams from continuing such wrongful conduct. Williams appealed. While the cause was pending on appeal, Patent No. 1,856,627 expired. We remanded the cause with instructions to terminate the injunction insofar as it enjoined further infringement of that patent, and we affirmed the judgment in all other respects. Williams v. Hughes Tool Co., 10 Cir., 186 F.2d 278, certiorari denied, 341 U.S. 903, 71 S.Ct. 612, 95 L.Ed. 1342. Thereafter, Patent No. 1,983,316 expired. Subsequent to the expiration of that patent, Williams filed in the cause a motion to terminate the injunction in toto. The grounds of the motion were that inasmuch as both patents had expired, the only possible basis for the injunction which then remained was the lease agreements of Hughes; that Williams was only enjoined from interfering with the contract arrange-

ments of Hughes because the acts of Williams also infringed the patents; that the injunction as to Patent No. 1,856,627 had already been lifted by the court; and that since Hughes had never taken action against the lessees themselves or made any showing that its contract rights could not be enforced by taking action against them, there appeared to be no logical reason for continuing the injunction. The court denied the motion, and Williams appealed.

Williams presents only one specification of points for reversal of the challenged order. Its substance is that since the patents have expired there is no justification for continuing the injunctions restraining Williams from interfering with the property rights of Hughes in its leased bits by re-tipping or rebuilding the teeth thereon. The argument in support of the contention is that the injunction was two-fold in character; that it restrained Williams from infringing the two patents by retipping drill bits manufactured by Hughes and also enjoined him from interfering with the property rights of Hughes in its leased bits by retipping and rebuilding teeth thereon; that the two features of the injunction were so closely interwoven as to be almost inseparable; that the feature restraining Williams from interfering with the property rights of Hughes was merely an adjunct to the feature restraining infringement of the patents; that upon the expiration of the two patents the first feature of the injunction automatically expired; and that the other inseparable feature should be terminated by order of the court. It is admitted frankly in the brief of Williams that if these two features of the injunction had been completely separate and independent holdings, the expiration of the patents would not affect the feature relating to interference with the property rights of Hughes in its leased bits by retipping and rebuilding teeth thereon. But the two features of the injunction were separate and independent. The equitable right of Hughes to protection against infringement of its patents was quite separate and apart from its system of leasing its bits rather than selling them. Hughes was entitled to restrain infringement of its patents wheth-

er the bits had been leased or sold. And if the practice of Williams in receiving from lessees bits manufactured by Hughes, retipping them, and building new teeth thereon, constituted systematic encouragement to lessees to breach valid and effective provisions in the leasing agreements, Hughes was entitled in equity to restrain such wrongful conduct without regard to whether the bits were manufactured under patents or not. The two rights were separate and distinct. Neither was dependent upon the other. Neither was an adjunct of the other. And the respective features of the injunction protecting such rights were equally separate and independent of each other.

It is stated in the brief of Williams that the basis for the argument that the injunction should now be terminated in toto is to be found almost entirely in the opinion on the former appeal of the case. The opinion on the former appeal lends no support whatever to the contention presently advanced under the motion. While the opinion contained certain statements respecting the right of a patentee to impose conditions or restrictions upon the use of the patented device by a licensee, such statements were made in the course of discussing the general question whether in its leasing agreements Hughes had been guilty of misuse of its patents. It was not said expressly or by fair implication that the validity of the lease agreements rested upon the fact that the leased bits were manufactured under the protection of existing patents. It was not said directly or indirectly that to permit the leasing of such bits after expiration of the patents would permit the extension of such patents beyond the seventeen-year period fixed by the statute. And in remanding the case, we were careful to direct that the injunction be terminated insofar as it enjoined fur-

ther infringement of the patent which had expired. Nothing was said in respect to the continued leasing of bits of the kind manufactured under the patent during its lifetime. Viewed in the light of its limited scope and grounds, the motion failed to present a compelling basis for the termination of the injunction in toto.

Affirmed.

MURRAH, Circuit Judge (concurring specially).

In the former case, it was my view that the unexpired patents were valid but uninfringed; that separate and apart from the patent monopoly, the leasing agreement had the legal effect of prohibiting retipping of the Hughes bits. The question remained, in my mind, whether the agreement, when considered outside the patent monopoly and construed to prevent retipping, could be squared with the anti-trust laws. Being of the view that this question was open and undecided in the trial court, I thought the case should be remanded for the determination of that issue in the first instance.

I interpreted the majority opinion in the former case to sustain the validity of the leasing agreement as a condition upon the right of use of the patented bits. Thus construed, it was my view that the injunction was limited to the protection of the patent monopoly. Now, however, my brethren construe the opinion to sustain the validity of the leasing agreement as a proper exercise of Hughes' property rights in its bits apart from the patent monopoly. The plain implication of this holding is to remove any question of the validity of the leasing agreement under the anti-trust laws, and it forecloses the question which I had thought was at large in the lawsuit. I must accede to the majority's interpretation of what it has written.